**Exhibit 1**

FILED
06-28-2023
Clerk of Circuit Court
La Crosse County WI
2023CV000304
Honorable Scott L Horne
Branch 4

STATE OF WISCONSIN          CIRCUIT COURT          LA CROSSE COUNTY

MARINE CREDIT UNION
127 West Ave N
La Crosse, WI 54603,

               Plaintiff,

-v-

JENNIFER HOWE SAULS MCKINNEY
429 S. 2nd St N. #322
West Salem, WI 54601

ISRAEL R. MCKINNEY
W5441 Innsbruck Road
West Salem, WI 54669

GUNDERSON CLINIC LTD
1910 South Ave
La Crosse, WI 54601

GUNDERSON LUTHERAN MEDICAL CENTER
1900 South Ave
La Crosse, WI 54601

LA CROSSE COUNTY CLERK OF CIRCUIT COURT
c/o La Crosse County Clerk
333 Vine Street
La Crosse, WI 54601

SCHNEIDER WINDOW COVERING
505 Brickl Road
West Salem, WI 54669

STATE OF WISCONSIN
DEPT OF CHILDREN AND FAMILIES
201 W. Washington Ave
Madison, WI 53703

UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE
c/o United States Attorney
517 E. Wisconsin Ave., Suite 530
Milwaukee, WI 53202
&
c/o Attorney General
10th & Constitutional Avenue, N.W.
Washington, DC 20530,

Case No: _____
Case Code: **30404**
Case Type: **Foreclosure of Mortgage**

Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN, to each person named above as a Defendant:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The Complaint, which is attached states the nature and basis of the legal action.

Within 20 days of receiving this summons (60 days if you are the United States of America / 45 days if you are the State of Wisconsin), you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is **Clerk of Circuit Court, La Crosse County Courthouse, 333 Vine Street. La Crosse, WI 54601**, and to the Plaintiff's attorney, whose address is **Sam Kaufman, Vande Zande & Kaufman, LLP, 408 E. Main Street, Waupun, WI 53963.** You may have an attorney help or represent you.

If you do not provide a proper answer within 20 days (60 days if you are the United States of America / 45 days if you are the State of Wisconsin), the court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this _27_ day of June, 2023.

**VANDE ZANDE & KAUFMAN, LLP**
Attorneys for Plaintiff

Sam Kaufman
Bar No. 1023976

PO Box 430
Waupun, WI 53963
(920) 324-2951

2

FILED
06-28-2023
Clerk of Circuit Court
La Crosse County WI
2023CV000304
Honorable Scott L Horne
Branch 4

STATE OF WISCONSIN    CIRCUIT COURT    LA CROSSE COUNTY

MARINE CREDIT UNION
127 West Ave N
La Crosse, WI 54603,

                    Plaintiff,                    Case No: _____
                                                  Case Code: 30404
         -v-                                      Case Type:  Foreclosure of Mortgage

JENNIFER HOWE SAULS MCKINNEY
429 S. 2nd St N. #322
West Salem, WI 54601

ISRAEL R. MCKINNEY
W5441 Innsbruck Road
West Salem, WI 54669

GUNDERSON CLINIC LTD
1910 South Ave
La Crosse, WI 54601

GUNDERSON LUTHERAN MEDICAL CENTER
1900 South Ave
La Crosse, WI 54601

LA CROSSE COUNTY CLERK OF CIRCUIT COURT
c/o La Crosse County Clerk
333 Vine Street
La Crosse, WI 54601

SCHNEIDER WINDOW COVERING
505 Brickl Road
West Salem, WI 54669

STATE OF WISCONSIN
DEPT OF CHILDREN AND FAMILIES
201 W. Washington Ave
Madison, WI 53703

1

UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE
c/o United States Attorney
517 E. Wisconsin Ave., Suite 530
Milwaukee, WI 53202
&
c/o Attorney General
10th & Constitutional Avenue, N.W.
Washington, DC 20530,
                    Defendants.

---

## COMPLAINT

The above named plaintiff appearing by its attorney, Sam Kaufman, asserts the following causes

of action against the above named defendants:

1.  The plaintiff is a lending institution with its office located in La Crosse, WI.

2.  The defendant, Jennifer Howe Sauls McKinney, is an adult resident of the State of Wisconsin

    residing at a last known address in West Salem, WI.

3.  The defendant, Israel R. McKinney,  is an adult resident of the State of Wisconsin residing at

    a last known address in West Salem, WI.

4.  The defendant, Gunderson Clinic LTD, is located in La Crosse, WI.

5.  The defendant, Gunderson Lutheran Medical Center, is located in La Crosse, WI.

6.  The defendant, Schneider Window Covering, is located in West Salem, WI.

7.  The defendant, State of Wisconsin Dept of Children and Families, is located in Madison, WI.

8.  The defendant, United States of America, Internal Revenue Service, is a sovereign body with

    it's Capital located in Washington, D.C.

9.  The plaintiff is the current owner and holder of a note and mortgage attached as exhibits A &

    B.

2

10. The defendant-mortgagors, McKinney, are in default of the subject note by failing to pay the installments due.

11. In accordance with the terms of the subject note, the lender has exercised its option to accelerate the balance outstanding for the subject note.

12. As of June 2, 2023 the amount due and owing to the plaintiff is $323,741.25, with a per diem of $113.15. See payoff attached hereto as exhibit C.

13. To secure the subject note the defendant-mortgagors conveyed to plaintiff a mortgage interest in the following real estate:

    Lot 9 of Certified Survey Map No. 120 recorded in the office of the Register of Deeds for La Crosse County, Wisconsin, on July 11, 1979 in Volume 1 of Certified Survey Maps, at Page 120, as Document No. 897908, being a redivision of part of the Northwest 1/4 of the Southeast 1/4 of Section 35, Township 17 North, Range 7 West, Town of Hamilton, La Crosse County, Wisconsin.

    Tax Key No. 7-01354-010
    Address: W5441 Innsbruck Road, West Salem, WI

14. That the subject property is a single-family unit, being less than 20 acres. That said property is occupied by the defendant mortgagors as homestead and cannot be sold in part or parcels without material injury to the rights of the parties hereto.

15. That the subject property shall be sold in accordance with Sec. 846.101, Wis. Stats., with a 6 month redemption period from entry of judgment. The plaintiff waives the right to entry of a deficiency balance money judgment.

16. The defendant, United States of America, possesses a 120 day right of redemption as to the subject property in which their respective liens attach, in accordance with 28 U.S.C. §2410

17. The defendants, United States of America - Internal Revenue Service, Gunderson Clinic LTD, Gunderson Lutheran Medical Center, La Crosse County Clerk of Circuit Court, Schneider Window Covering and State of Wisconsin Dept of Children and Families, may

3

each claim an interest in the subject property by virtue of their respective liens as identified

for each defendant in the attached Commitment for Title Insurance, Schedule B, Part 2

EXCEPTIONS, Judgments and liens, paragraphs 12 - 22. That the lien interest of each

respective defendant is subsequent, junior and subordinate to plaintiff's mortgage interest.

18. The plaintiff requests the right to amend pleadings pursuant to §846.09, Wis. Stats., to join

additional necessary parties, if necessary.

WHEREFORE, the plaintiff demands judgment in favor of the plaintiff and against the

defendants as follows:

1.  Against the defendants and all other persons who may claim an interest in and to the

    subject property subsequent to the filing of the lis pendens, for foreclosure of the subject

    property as prescribed by law, including the defendant's right to redeem the same;

2.  That the mortgagor defendants or persons occupying the premises be enjoined and

    restrained from committing waste during the pendency of the action;

3.  That the plaintiff may take all necessary steps to secure and winterize the subject property

    in the event it is abandoned by the defendants and becomes unoccupied during the

    redemption period or until such time as this matter is concluded.

4.  That plaintiff have such other and further relief as may be just and equitable.

4

Dated this ___27___ day of June, 2023.

VANDE ZANDE & KAUFMAN, LLP
Attorney for Plaintiff

_____
Sam Kaufman
State Bar No. 1023976

PO Box 430
Waupun, WI 53963
(920) 324-2951

***Vande Zande & Kaufman, LLP is attempting to collect a debt and any information obtained will be used for that purpose.**

***If you have previously received a Chapter 7 Discharge in Bankruptcy, this correspondence should not be construed as an attempt to collect a debt.

# ADJUSTABLE RATE NOTE
### (1 Year Treasury Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 23, 2013        La Crosse        WI
[Date]        [City]        [State]

W5441 Innsbruck Road, West Salem, WI 54669
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 318,750.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Marine Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **11.50000** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder will be applied as of the date it is received and will be applied to interest before principal.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the fifth day of each month beginning on **January, 2014** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on **December 05, 2043** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **127 West Avenue North, La Crosse, WI 54601**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **3,156.55** . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

WISCONSIN ADJUSTABLE RATE NOTE-ARM 5-2-Single Family-FannieMae/Freddie Mac UNIFORM INSTRUMENT
Fannie Mae 4-2/5-2/6-2 ARM
VMP ®
Wolters Kluwer Financial Services

Form 3502.50 1/01
VMP822N(WI) (0804)
Page 1 of 4

Initials: _____

EXHIBIT
A

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates
The interest rate I will pay may change on the fifth day of **December, 2018** , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **Ten and 000/1000** percentage points ( **10.00000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **13.50000 %** or less than **11.50000%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **17.50000 %**. My interest rate will never be less than 11.50000 %

### (E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from

WISCONSIN ADJUSTABLE RATE NOTE-ARM 5-2-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Fannie Mae 4.2/5-2/6-2 ARM
VMP ®
Wolters Kluwer Financial Services

Initials: JHSJJ RMM

Form 3502.50 1/01
VMP822N(WI) (0804)
Page 2 of 4

me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

WISCONSIN ADJUSTABLE RATE NOTE-ARM 5-2-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Fannie Mae 4-2/5-2/6-2 ARM
VMP ®
Wolters Kluwer Financial Services

Form 3502.50 1/01

Initial: [signature]

VMP822N(WI) (0804)
Page 3 of 4

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Jennifer Howe Sauls McKinney                     -Borrower

_____ (Seal)
Israel R. McKinney                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

_____ (Seal)
                     -Borrower

*[Sign Original Only]*

WISCONSIN ADJUSTABLE RATE NOTE-ARM 5-2-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Fannie Mae 4-2/5-2/6-2 ARM
VMP ®
Wolters Kluwer Financial Services

Form 3502.50 1/01
VMP822N(WI) (0804)
Page 4 of 4

Initials: _____

# MORTGAGE

~~DOCUMENT NUMBER~~

~~NAME & RETURN ADDRESS~~

Marine Credit Union
Loan Servicing
P.O. Box 309
Onalaska, WI 54650

PARCEL IDENTIFIER NUMBER
7-1354-1

**1633880**
LACROSSE COUNTY
REGISTER OF DEEDS
CHERYL A. MCBRIDE

RECORDED ON
12/23/2013    01:39PM
REC FEE:  30.00
EXEMPT #:
PAGES: 19

*1633880 19*

——————————— |Space Above This Line For Recording Data| ——————————— X 19

RETURN TO
WORLDWIDE RECORDING, INC.
9801 LEGLER RD
LENEXA, KS 66219
1-800-316-4682
BWO1933

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated November 23, 2013 together with all Riders to this document.
(B) "Borrower" is Jennifer N. McKinney and Israel R. McKinney, Husband and Wife    HOWE SAULS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Marine Credit Union

Lender is a
organized and existing under the laws of Wisconsin

WISCONSIN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3050  1/01

Wolters Kluwer Financial Services
VMP®-6(WI) (0811)
Page 1 of 15                Initials: JHM IRM



EXHIBIT
B
tabbies

Lender's address is 127 West Avenue North, La Crosse, WI 54601

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated November 23, 2013
The Note states that Borrower owes Lender Three Hundred Eighteen Thousand Seven
Hundred Fifty and 00/100                                                          Dollars
(U.S. $318,750.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 05, 2043

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the **County** of **La Crosse** :

[Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]

Lot 9 of La Crosse County Certified Survey Map filed in Volume 1, on page 120, as Document no. 897908, La Crosse County, Wisconsin.

which currently has the address of W5441 Innsbruck Road

[Street]

West Salem            [City], Wisconsin **54669**    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

WISCONSIN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-6(WI) (0811)      Page 3 of 15      Initials ___ Form 3050  1/01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) late charges; (b) amounts due under Section 3; (c) interest due under the Note; (d) principal due under the Note. Such payments shall be applied to each Periodic Payment in the order in which it became due.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable

Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

25. **Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____            _____ (Seal)
                                            Jennifer Howe Sauls McKinney    -Borrower


_____            _____ (Seal)
                                            Israel R. McKinney              -Borrower


_____ (Seal)      _____ (Seal)
            -Borrower                            -Borrower


_____ (Seal)      _____ (Seal)
            -Borrower                            -Borrower


_____ (Seal)      _____ (Seal)
            -Borrower                            -Borrower

STATE OF WISCONSIN.                          La Crosse    County ss:
    The foregoing instrument was acknowledged before me this November 23, 2013
by Jennifer W. McKinney and Israel R. McKinney
              HOWE SAULS

My Commission Expires: 12/07/2014

                                    _____
                                    Notary Public, State of Wisconsin   M. Jolene Lien

M JOLENE LIEN
Notary Public
State of Wisconsin

This instrument was prepared by

Chris Jandt ~ Marine Credit Union
127 West Avenue North
La Crosse, WI  54601
    952-545-2816

MCKINNEY,JENNIFE Loan  : 1ST MORTGAGE ARM               ..06/02/2023

A payment of **$323,741.25** is required to pay off this loan on **06/02/23**.

```
Principal Balance:                 305,926.37
Interest Type:                          Daily
Interest Rate:                         13.500
Interest Due:                       18,942.82
One Day's Interest:                   113.1509
Due Date:                          12/05/2022
Amount Past Due by Payoff Date:     26,061.41
Past Due Payment Count:                      6
Late Charge Due:                       562.41
Billed Fee Due:                      1,071.10
Available Escrow Balance:            2,761.45
Escrow Dividend:                          N/A

Homeowners Insurance:
Next Distribution Date:            08/25/2023
Next Distribution Amount:            2,452.00

Property Tax:
Next Distribution Date:            12/31/2023
Next Distribution Amount:            5,338.47
```



Page 1



### Knight | Barry
#### TITLE GROUP

Knight Barry Title United LLC
500 2nd St. S, Ste. 102
La Crosse, WI 54601
(608)791-2000
Fax: (608) 351-2261

## COMMITMENT FOR TITLE INSURANCE
### Schedule A

**File #: 2211077**
**Reference No: 712145-0100**
**Revision: 2211077**

Completed on: 05/04/2023 10:52 AM
Last Revised on: 05/04/23 10:56 AM
Printed on: 05/04/2023 10:56 AM
Title Contact: Kyle Pacynski (kylep@knightbarry.com)
Closing Contact: lacrosecloser@knightbarry.com

| | |
|---|---|
| **COMMITMENT DATE** | May 2, 2023 at 08:00 AM |
| **1. POLICY TO BE ISSUED** | |
| **ALTA OWNERS POLICY (07/01/21)** | |
| Proposed Amount of Insurance: | $15,000.00 |
| *(the purchase price)* | |
| Proposed Insured: | **Plaintiff named or to be named in the foreclosure action called for in Schedule B-Section I** |
| *(the buyer)* | |
| **2. TITLE TO THE FEE SIMPLE ESTATE OR INTEREST IN THE LAND IS AT THE COMMITMENT DATE VESTED IN** *(the owner)* | Jennifer Howe Sauls McKinney and Israel R. McKinney, wife and husband |
| **3. THE LAND IS DESCRIBED AS FOLLOWS** *(the legal description)* | Lot 9 of Certified Survey Map No. 120 recorded in the office of the Register of Deeds for La Crosse County, Wisconsin, on July 11, 1979 in Volume 1 of Certified Survey Maps, at Page 120, as Document No. 897908, being a redivision of part of the Northwest 1/4 of the Southeast 1/4 of Section 35, Township 17 North, Range 7 West, Town of Hamilton, La Crosse County, Wisconsin. |

For informational purposes only:
Property Address: W5441 Innsbruck Rd, West Salem, WI 54669
Tax Key Number: 7-01354-010



EXHIBIT

D

ebbies

This page is only a part of the 2021 ALTA Commitment for Title Insurance underwritten by Westcor Land Title Insurance Company. This Commitment is not valid without the Notice, the Commitment to Issue Policy and the Commitment Conditions (located at www.knightbarry.com/cover/wc/21 ); Schedule A; Schedule B, Part 1 Requirements; and Schedule B, Part 2 Exceptions. *All italicized words in this Commitment are for informational purposes only and for the convenience of the reader and are not part of the ALTA Commitment form.*

Page 1 of 6



**COMMITMENT FOR TITLE INSURANCE**
Schedule B, Part 1
REQUIREMENTS

File #: 2211077
Reference No: 712145-0100
Revision: 2211077

Knight Barry Title United LLC
500 2nd St. S, Ste. 102
La Crosse, WI 54601
(608)791-2000
Fax: (608) 351-2261

Completed on: 05/04/2023 10:52 AM
Last Revised on: 05/04/23 10:56 AM
Printed on: 05/04/2023 10:56 AM
Title Contact: Kyle Pacynski (kylep@knightbarry.com)
Closing Contact: lacrossecloser@knightbarry.com

**All of the following Requirements must be met:**

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. ~~A petition for bankruptcy was filed in the United States Bankruptcy Court for the Western District of Wisconsin on September 27, 2022 as Case No. 1-22-11558-rmb, Jennifer McKinney and Israel R. McKinney, debtors. A satisfactory order for relief from the automatic stay in bankruptcy, which permits the commencement of the action of foreclosure must be entered by said court, and a copy of the order must be provided to the Company.~~

6. Pursuant to that certain Order of the United States Bankruptcy Court for the Western District of Wisconsin in Case No. 1-22-11558-rmb, which Order was entered on March 20, 2023 , relief from the automatic stay was granted to Marine Credit Union with respect to the property located at W5441 Innsbruck Rd, West Salem, WI 54669.

7. An action to foreclose the Mortgage from Jennifer Howe Sauls McKinney and Israel R. McKinney, wife and husband to Marine Credit Union in the amount of 318,750.00 dated November 23, 2013 and recorded December 23, 2013 as Document No. 1633880 should be duly prosecuted to judgment, sale and confirmation of sale.

8. NOTE: A Lis Pendens was recorded on March 2, 2015 as Document No. 1652557 regarding the above-described mortgage. The Case referenced on said Lis Pendens, 2014CV000809, was dismissed on June 12, 2020; however, no Release or Satisfaction of Lis Pendens has been recorded in the La Crosse County Register of Deeds.

9. Deed from the Sheriff of  County to the Plaintiff named or to be named in the foreclosure action called for in Schedule B, Part 1.

10. The Proposed Policy Amount(s) shown on Schedule A must be increased to an amount equivalent to the full value of the Land before the policy will be issued. At such time, an additional charge will be made in conformity with established rates. The Company has no liability under this Commitment until this Commitment is revised stating the amount of the proposed policy(ies).

11. A divorce action is pending in Case No. 2022FA000153 regarding the marriage of Jennifer H. Sauls McKinney and Israel R. McKinney with no further information available at this time.

This page is only a part of the 2021 ALTA Commitment for Title Insurance underwritten by Westcor Land Title Insurance Company. This Commitment is not valid without the Notice, the Commitment to Issue Policy and the Commitment Conditions (located at www.knightbarry.com/cover/wc/21 ); Schedule A; Schedule B, Part 1 Requirements; and Schedule B, Part 2 Exceptions. *All italicized words in this Commitment are for informational purposes only and for the convenience of the reader and are not part of the ALTA Commitment form.*



**COMMITMENT FOR TITLE INSURANCE**
**Schedule B, Part 1**
**REQUIREMENTS**

File #: 2211077
Reference No: 712145-0100
Revision: 2211077

Knight Barry Title United LLC
500 2nd St. S, Ste. 102
La Crosse, WI 54601
(608)791-2000
Fax: (608) 351-2261

Completed on: 05/04/2023 10:52 AM
Last Revised on: 05/04/23 10:56 AM
Printed on: 05/04/2023 10:56 AM
Title Contact: Kyle Pacynski (kylep@knightbarry.com)
Closing Contact: lacrossecloser@knightbarry.com

12.   NOTE: For all future recordings and filings, you should use the legal description shown on Schedule A, which is a modern and more updated version of the legal description.

This page is only a part of the 2021 ALTA Commitment for Title Insurance underwritten by Westcor Land Title Insurance Company. This Commitment is not valid without the Notice, the Commitment to Issue Policy and the Commitment Conditions (located at www.knightbarry.com/cover/wc/21 ); Schedule A; Schedule B, Part 1 Requirements; and Schedule B, Part 2 Exceptions. *All italicized words in this Commitment are for informational purposes only and for the convenience of the reader and are not part of the ALTA Commitment form.*



**TITLE GROUP**

**COMMITMENT FOR TITLE INSURANCE**
**Schedule B, Part 2**
**EXCEPTIONS**

File #: 2211077
Reference No: 712145-0100
Revision: 2211077

Knight Barry Title United LLC
500 2nd St. S, Ste. 102
La Crosse, WI 54601
(608)791-2000
Fax: (608) 351-2261

Completed on: 05/04/2023 10:52 AM
Last Revised on: 05/04/23 10:56 AM
Printed on: 05/04/2023 10:56 AM
Title Contact: Kyle Pacynski (kylep@knightbarry.com)
Closing Contact: lacrossecloser@knightbarry.com

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

**The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:**

1.     Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date, as set forth on the Commitment for Title Insurance, and the Date of Policy, as set forth on the Policy.

2.     Special assessments, special taxes or special charges, if any, payable with the taxes levied or to be levied for the current and subsequent years.

3.     Liens, hook-up charges or fees, deferred charges, reserve capacity assessments, impact fees, or other charges or fees and due payable on the development or improvement of the Land, whether assessed or charged before or after the Date of the Policy.

4.     Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

5.     Rights or claims of parties in possession not shown by the Public Records.

6.     Any encroachments, encumbrance, violation, variation, or adverse circumstance affecting Title that would be disclosed by an accurate and complete land survey of the Land.

7.     Easements or claims of easements not shown by the Public Records.

8.     Any claim of adverse possession or prescriptive easement.

### *Taxes and Special Assessments*

9.     General Taxes for the year 2023 and subsequent years, not yet due or payable.  In the event that the transaction to be insured under this Commitment occurs in December of 2023 or later, then please contact the Company for an update as to the status of taxes.  Failure to do so will result in the following appearing as an exception on the final title insurance policy to be issued pursuant to this Commitment: "General Taxes for the year 2023 and subsequent years."

This page is only a part of the 2021 ALTA Commitment for Title Insurance underwritten by Westcor Land Title Insurance Company. This Commitment is not valid without the Notice, the Commitment to Issue Policy and the Commitment Conditions (located at www.knightbarry.com/cover/wc/21 ); Schedule A; Schedule B, Part 1 Requirements; and Schedule B, Part 2 Exceptions. *All italicized words in this Commitment are for informational purposes only and for the convenience of the reader and are not part of the ALTA Commitment form.*



**COMMITMENT FOR TITLE INSURANCE**
Schedule B, Part 2
EXCEPTIONS

File #: 2211077
Reference No: 712145-0100
Revision: 2211077

Knight Barry Title United LLC
500 2nd St. S, Ste. 102
La Crosse, WI 54601
(608)791-2000
Fax: (608) 351-2261

Completed on: 05/04/2023 10:52 AM
Last Revised on: 05/04/23 10:56 AM
Printed on: 05/04/2023 10:56 AM
Title Contact: Kyle Pacynski (kylep@knightbarry.com)
Closing Contact: lacrossecloser@knightbarry.com

### *Easements, restrictions, covenants and other encumbrances*

10. Covenants, conditions, provisions, reservations, restrictions, rights of first refusal, options to purchase, easements, servitudes, building set back lines, reservations of minerals or mineral rights, if any, affecting title to the Land, which: (i) appear in or are referenced in the public land records, or (ii) appear in, are shown on, or are referenced in any recorded plat or certified survey map.

11. Public or private rights, if any, in such portion of the Land as may be presently used, laid out, or dedicated in any manner whatsoever, for street, highway and/or alley purposes.

### *Judgments and liens*

12. Federal Tax Lien disclosed by Notice of United States tax lien recorded December 17, 2015 as Document No. 1667708 against Israel R & Jennifer H McKinney in the amount of $92,067.73.

13. Federal Tax Lien disclosed by Notice of United States tax lien recorded February 8, 2016 as Document No. 1669794 against Israel R & Jennifer H McKinney in the amount of $47,942.41.

14. Federal Tax Lien disclosed by Notice of United States tax lien recorded July 25, 2016 as Document No. 1678760 against Israel R & Jennifer H McKinney in the amount of $56,910.06.

15. Federal Tax Lien disclosed by Notice of United States tax lien recorded February 3, 2020 as Document No. 1740379 against Israel R & Jennifer H McKinney in the amount of $582,913.65.

16. Federal Tax Lien disclosed by Notice of United States tax lien recorded March 8, 2021 as Document No. 1767527 against Israel R & Jennifer H McKinney in the amount of $143,266.21.

17. Judgment entered December 3, 2015 and docketed December 3, 2015 in favor of Gundersen Clinic LTD, 1910 South Ave, La Crosse, WI 54601, creditor(s) and against Israel McKinney and Jennifer McKinney, W5441 Innsbruck Rd, West Salem, WI 54669 , debtor(s) in the amount of $22,251.59, Case No. 2015CV000523.

18. Judgment entered December 3, 2015 and docketed December 3, 2015 in favor of Gundersen Lutheran Medical CenterD, 1900 South Ave, La Crosse, WI 54601, creditor(s) and against Israel McKinney and Jennifer McKinney, W5441 Innsbruck Rd, West Salem, WI 54669 , debtor(s) in the amount of $20,622.98, Case No. 2015CV000523.

19. Judgment entered February 26, 2015 and docketed February 26, 2015 in favor of La Crosse County Clerk of Circuit Court, creditor(s) and against Israel R McKinney, N9391 US Hwy 53 # 25, Holmen, WI 54636 , debtor(s) in the amount of $175.30, with no Case No. available.

20. Judgment entered January 26, 2015 and docketed January 26, 2015 in favor of La Crosse County Clerk of Circuit Court, creditor(s) and against Israel R McKinney, W5441 Innsbruck Rd, West Salem, WI 54669 , debtor(s) in the amount of $150.10, with no Case No. available.

This page is only a part of the 2021 ALTA Commitment for Title Insurance underwritten by Westcor Land Title Insurance Company. This Commitment is not valid without the Notice, the Commitment to Issue Policy and the Commitment Conditions (located at www.knightbarry.com/cover/wc/21 ); Schedule A; Schedule B, Part 1 Requirements; and Schedule B, Part 2 Exceptions. *All italicized words in this Commitment are for informational purposes only and for the convenience of the reader and are not part of the ALTA Commitment form.*



**COMMITMENT FOR TITLE INSURANCE**
Schedule B, Part 2
EXCEPTIONS

File #: 2211077
Reference No: 712145-0100
Revision: 2211077

Knight Barry Title United LLC
500 2nd St. S, Ste. 102
La Crosse, WI 54601
(608)791-2000
Fax: (608) 351-2261

Completed on: 05/04/2023 10:52 AM
Last Revised on: 05/04/23 10:56 AM
Printed on: 05/04/2023 10:56 AM
Title Contact: Kyle Pacynski (kylep@knightbarry.com)
Closing Contact: lacrossecloser@knightbarry.com

21. Judgment entered March 21, 2014 and docketed March 21, 2014 in favor of Schneider Window Covering, 505 Brickl Rd, West Salem, WI 54669, creditor(s) and against Israel McKinney and Jennifer H McKinney, W5441 Innsbruck Rd, West Salem, WI 54669, debtor(s) in the amount of $3,261.23, Case No. 2014SC000410.

22. Child Support Lien filed against Jennifer H.S. McKinney in favor of the State of Wisconsin Department of Children and Families in the amount of $1,999.00 filed March 5, 2023 as Docket Number 000750604 in La Crosse County.

### *Mortgages, assignments, leases and land contracts*

There are no matters to report for this section.

### *Other matters*

There are no matters to report for this section.

**FOOTNOTES**
*THIS IS FOR INFORMATIONAL PURPOSES ONLY; NOTHING NOTED IN THIS SECTION WILL APPEAR ON THE POLICY.*

Taxes for the year 2022 in the amount of $5,338.47, and all prior years are paid.

This commitment is solely for the purpose of guaranteeing a purchaser at Sheriff's sale. Consult the company for additional exceptions or requirements before using this for other purposes. Additionally, the amount of insurance must be increased to the amount of the sale price. Additional premium will be billed at the time.

A search of the tract index maintained by the La Crosse County Register of Deeds office ('Register') for the 24 months prior to the Effective Date of this Commitment reveals no deeds conveying the Land recorded with the Register during the stated time period. The last document conveying the Land recorded with the Register was a deed to Jennifer Howe Sauls McKinney and Israel R. McKinney, wife and husband recorded on December 23, 2013 as Document No. 1633879.

This page is only a part of the 2021 ALTA Commitment for Title Insurance underwritten by Westcor Land Title Insurance Company. This Commitment is not valid without the Notice, the Commitment to Issue Policy and the Commitment Conditions (located at www.knightbarry.com/cover/wc/21 ); Schedule A; Schedule B, Part 1 Requirements; and Schedule B, Part 2 Exceptions. *All italicized words in this Commitment are for informational purposes only and for the convenience of the reader and are not part of the ALTA Commitment form.*

# La Crosse County Case Number 2023CV000304 Marine Credit Union vs. Jennifer Howe Sauls McKinney, Israel R McKinney, Gunderson Clinic Ltd, Gunderson Lutheran Medical Center et al.

## Case summary

| **Filing date** | **Case type** | **Case status** |
|---|---|---|
| 06-28-2023 | Civil | Open - Electronic filing |

| **Class code description** | **Responsible official** | **Branch ID** |
|---|---|---|
| Foreclosure of Mortgage | Horne, Scott L | 4 |

### Party summary

| Party type | Party name | Party status |
|---|---|---|
| Plaintiff | Marine Credit Union | |
| Defendant | Howe Sauls McKinney, Jennifer | |
| Defendant | McKinney, Israel R | |
| Defendant | Gunderson Clinic Ltd | |
| Defendant | Gunderson Lutheran Medical Center | |
| Defendant | La Crosse County Clerk of Circuit Court | |
| Defendant | Schneider Window Covering | |
| Defendant | State of Wisconsin Department of Children and Families | |
| Defendant | United States of America Internal Revenue Service | |

## Parties

### Plaintiff: Marine Credit Union

| Date of birth | Sex | Race |
|---|---|---|
| | | |

**Address (last updated 06-28-2023)**
127 West Ave N, La Crosse, WI 54601 US

**Attorneys**

| Attorney name | Guardian ad litem | Entered |
|---|---|---|
| Kaufman, Sam Ernest | No | 06-28-2023 |

### Defendant: Howe Sauls McKinney, Jennifer

| Date of birth | Sex | Race |
|---|---|---|
| | | |

**Address (last updated 06-28-2023)**
429 S. 2nd St N. #322, West Salem, WI 54601 US

### Defendant: McKinney, Israel R

| Date of birth | Sex | Race |
|---|---|---|
| | | |

**Address (last updated 06-28-2023)**
W5441 Innsbruck Road, West Salem, WI 54669 US

**Defendant: Gunderson Clinic Ltd**

Date of birth                                    Sex                                    Race

**Address (last updated 06-28-2023)**
1910 South Ave, La Crosse, WI 54601 US

**Defendant: Gunderson Lutheran Medical Center**

Date of birth                                    Sex                                    Race

**Address (last updated 06-28-2023)**
1900 South Ave, La Crosse, WI 54601 US

**Defendant: La Crosse County Clerk of Circuit Court**

Date of birth                                    Sex                                    Race

**Address (last updated 06-28-2023)**
333 Vine Street, c/o La Crosse Co. Clerk, La Crosse, WI 54601 US

**Defendant: Schneider Window Covering**

Date of birth                                    Sex                                    Race

**Address (last updated 06-28-2023)**
505 Brickl Road, West Salem, WI 54669 US

**Defendant: State of Wisconsin Department of Children and Families**

Date of birth                                    Sex                                    Race

**Address (last updated 06-28-2023)**
201 W. Washington Ave, Madison, WI 53703 US

**Defendant: United States of America Internal Revenue Service**

Date of birth                                    Sex                                    Race

**Address (last updated 06-28-2023)**
517 E. Wisconsin Ave., Suite 530, Milwaukee, WI 53202 US

**Court record**

2023CV000304 Case Details in La Crosse County

| Date | Event | Court official | Court reporter | Amount |
|------|-------|----------------|----------------|--------|
| 06-28-2023 | Admission of service | | | $285.50 |
| | **Additional text:** | | | |
| | Admission of Service re WI Dept of Children and Families | | | |
| 06-28-2023 | Filing fee paid | | | |
| | **Additional text:** | | | |
| | Adjustment Number: 23A 004658, | | | |
| | Payable Number: 203037, | | | |
| | Receipt Number: 23R 008143, | | | |
| | Amount: $285.50 | | | |
| 06-28-2023 | Case initiated by electronic filing | | | |
| 06-28-2023 | Summons and complaint | | | |